BOHN ET AL. *v*. ABBOTT.

(No. 312826—Decided June 13, 1975.)

Franklin County Municipal Court.

*Mr. Gary T. Robinson*, for plaintiffs.
*Mr. Eugene L. Matan*, for defendant.

FAIS, C. J.  The plaintiffs' complaint alleged that they were in the process of constructing a residence, and that the defendant, as the owner of an insurance agency, sold the plaintiffs an insurance policy.  The effective date of such policy was stated to be April 23, 1970.  On May 7, 1970, a basement wall of the residence collapsed, and plain-

tiffs claim an additional expenditure of $1,984.14 to restore the basement wall.

The gravamen of the complaint consisted of allegations that the defendant negligently failed to write an insurance policy to cover the loss occasioned by the collapsing basement wall. In other words, the defendant is charged with negligence in omitting to cover such a loss under a "builder's risk" coverage.

Originally, defendant filed his answer to the complaint in the form of a general denial. Thereafter, the parties filed numerous pleadings, consisting of motions, request for interrogatories, answers to interrogatories, and supportive affidavits. The issues continued to be contested by pleadings for a period of two and a half years. An attempt was made by the defendant to add a third party to the action and to file a cross-complaint against such third party. This effort failed after an oral hearing on this cross-complaint.

Efforts by counsel to place the case on the docket for trial resulted in a certificate of readiness being filed July 20, 1973, with a request that the Assignment Commissioner not assign the case for trial until September 1, 1973. The case was set for trial on two occasions and reassigned both times at the request, and by agreement of, both counsel.

An amended answer set forth affirmative matters not raised by his original general denial. Defendant alleged he sold a builders risk policy to the plaintiffs without knowledge that a residence was being constructed at the time. Defendant denied that he was in any way negligent in his writing of insurance coverage for the plaintiffs. He did, however, admit knowledge of the collapse of the basement wall, for reasons unknown to the defendant. In addition, defendant claimed that plaintiffs were negligent in not examining their policy to determine any omission of coverage which they desired. Further answering, defendant said that no claim was made by plaintiffs under a policy which would cover the loss sustained by the plaintiffs. The pleadings do not reveal any reply being filed by plaintiffs to the affirmative matters set forth in the amended answer.

Neither does the record, made upon trial of this cause disclose any reason for a lack of reply.

The case was tried to the court and submitted for decision.

The evidence of the plaintiffs supported the claim that they were in the process of building a residence at 1540 McCoy Road in the City of Columbus, and that construction began in early spring of 1970. In order to protect their interests in the structure and to save them from loss during the construction period plaintiffs consulted with Lynn Holder, an insurance agent, and informed him of their desires regarding insurance. Mr. Holder advised them that he didn't write such insurance policies but that he would convey the information and the request to the defendant who was a casualty insurance underwriter. Defendant took the order from Holder to write the policy. Payment for the policy was made by plaintiff without any conversation with the defendant, nor did plaintiff confer with the defendant until the loss occurred. The builder's risk policy written by defendant was in the amount of $75,000 and the risk was covered by General Insurance Company of America.

The plaintiffs maintained that the defendant's professional training and knowledge gained from experience prompted him to write a "broad form" policy with no limitations. Hence, the plaintiffs' claim that defendant was negligent in his services attempted to be rendered for plaintiffs. Plaintiffs further asserted that the $75,000 figure should have alerted defendant to write complete coverage in every detail.

Defendant's evidence indicated that Lynn Holder told defendant that "my client wants a builder's risk policy." Defendant contended that "special coverage" should have been requested, and without such special instructions, the policy issued provided standard coverage and adequately covered the risks as requested by the plaintiffs.

After the loss occurred a claims representative of the insurer made an investigation of the loss, and later advised the plaintiffs that the company was denying the claim for the reason that the terms of the policy did not cover this

type of casualty. The plaintiffs accepted the decision and they did not follow up the denial with any type of action against the company.

Further comment on the facts and the situation between the parties does not appear necessary, except to observe again that there was no personal or direct contact between the parties as to what was intended to be protected under the policy. The contact was indirect and made through agent Holder. Holder admittedly did not have knowledge of the casualty insurance business and he only had a brief communication with the defendant. The quantum of care and responsibility required of the defendant certainly needs to be measured by the communication between the parties and the intentions of the parties is an important and salient factor in this case. A lack of communication lends less credibility to the relationship of the parties and the responsibilities if any, assumed by each.

There is no question but that defendant was required to act reasonably and diligently under the circumstances. But how far does the defendant need to go in order to be said to have fulfilled his obligation to the plaintiff? Plaintiffs claim that defendant was duty bound to write a policy specifically covering the loss in question. Unless the defendant did this, plaintiff maintains the defendant was negligent and must therefor respond in damages resulting from a lack of casualty insurance to pay plaintiffs for their loss.

The duty of an insurance agent to a prospective insured is discussed in 30 Ohio Jurisprudence 2d 165, Insurance, Section 151.

"The duty of an agent of an applicant for insurance, or of one already insured, depends in some measure upon the manner in which the agency was created—that is, whether his authority arises impliedly or whether he acts under general orders or pursuant to special instructions. Another element of importance is whether he is vested with an absolute discretion, or whether his orders are peremptory. Again, his duties may depend to some extent upon his known degree of skill, intelligence, or knowledge.

*Generally, he must exercise such reasonable skill and ordinary diligence as may fairly be expected from a person in his situation in doing what is necessary to effect a policy, in seeing that it effectually covers the property to be insured,* in selecting the insurer and ascertaining that it is of good credit and standing, and in obtaining as good terms as are reasonably possible. In all this, he is obligated to exercise the strictest veracity, candor, and good faith both toward his employer and the insured.'' (Emphasis added.)

It is well settled that an insurance agent will be liable to his applicant or insured for damages resulting from the agent's false and fraudulent representations which the insured has relied upon to his damage. However we have no claim of such a nature in this case. As far as the evidence is concerned, there was no deceit or a falsification on the part of anyone involved. All parties appear to have been acting in good faith and with complete respect for the other's rights.

Looking further into the law, this court finds a statement generally accepted and applicable to the question of an agent's liability to an insured. See 29 A. L. R. 2d 187:

''An insurance agent owes the duty to his principal to exercise good faith and reasonable diligence to procure insurance on the best terms he can obtain: *Colpe Invest. Co.* v. *Seeley & Co.*(1933), 132 Cal. App. 16, 22 P. 2d 35; *Ursini* v. *Goldman* (1934), 118 Conn. 554, 173 A. 789; *Milliken* v. *Woodward* (1900), 64 N. J. L. 444, 45 A. 796; *Burges* v. *Jackson* (1897), 18 App. Div. 296, 46 N. Y. S. 326, aff'd 162 N. Y. 632, 57 N. E. 1105; *Scharles* v. *N. Hubbard Jr. & Co.* (1911), 74 Misc. 72, 131 N. Y. S. 848; *Elam* v. *Smithdeal Realty & Ins. Co.* (1921), 182 N. C. 599, 109 S. E. 632, 18 A. L. R. 1210.''

In the case of *Machine Company* v. *Insurance Company*, 50 Ohio St. 549, in paragraph two of the syllabus it is stated:

''When nothing is said in the negotiations about special rates of insurance, or special conditions of the

policy, it will be presumed that those which were usual and customary were intended."

A more recent case decided by the Supreme Judicial Court of Massachusetts involved an action against an agent of an insurance company wherein the plaintiff alleged that the broker failed in his promise to obtain for the insured a policy of liability insurance which would give protection "against any liability claims that might be brought against it."

Plaintiff testified that he told the defendant broker that "he wanted insurance coverage from A to Z, second to none to which the defendant replied that he would definitely comply."

The court, ruling in favor of the broker, cited the good intentions of both parties and then expressed its conclusion in the following terms, *Boston Camping Distributor Co., Inc.*, v. *Lumbermens Mutual Casualty Co.*, 282 N. E. 2d 374, page 376.

"The president of the plaintiff corporation was expressing his intention to procure a good insurance contract. Any reply made by the broker was expressive of present intention but was not in its effect a contract."

Also, the second paragraph of the syllabus of the *Boston Camping Distributor* case expresses the opinion of the court:

"Fact that insured's president told insurance broker that he wanted insurance coverage from A to Z, second to none, and that the broker replied he would comply did not make broker liable when liability policy obtained excluded coverage for damage resulting from automatic sprinkler leak as the insured's president was expressing his intention to procure a good policy and any reply by the broker was expressive of present intention, but was not in its effect a contract."

The court has also considered the fact that an "all risk policy" might not have covered the plaintiffs' loss. The court would have to speculate that a full coverage policy written for the plaintiff would have covered the plaintiffs' loss no matter how it occurred. In other words, the plain-

tiffs' argument that a different type of policy would have covered the loss is purely conjecture and speculative. Every policy is subject to exceptions and the cause of each loss must be shown to fit within the terms of the coverage. This court concludes that the plaintiffs' argument that "an all risk policy" would have covered the loss in question is not tenable.

This court having carefully considered all of the facts and the law concludes that the plaintiffs cannot recover from the defendant agent on the basis of negligence—either for acts of omission or commission.

Wherefore, judgment is hereby rendered in favor of the defendant for costs.

*Judgment for defendant.*